# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SELECT SPECIALTY HOSPITAL –                )
BLOOMINGTON, INC., *et. al*, and            )
                                            )
SELECT SPECIALTY HOSPITAL –                )
AUGUSTA, INC., *et. al*,                     )
                                            )   **Civil Case No. 09cv2008 (RJL),**
     **Plaintiffs,**                    )
                                            )   **consolidated with**
     **v.**                           )
                                            )   **Civil Case No. 09cv2362 (RJL)**
KATHLEEN SEBELIUS, Secretary               )
U.S. Dep't of Health and Human Services    )
                                            )
     **Defendant.**                    )

## MEMORANDUM OPINION
### March 3*l*, 2011 [## 17, 18]

Plaintiffs Select Specialty Hospital Bloomington ("SSH Bloomington") *et. al* and

Select Specialty Hospital Augusta *et. al* ("SSH Augusta" and collectively, "plaintiffs"),

bring this action against Health and Human Services ("HHS") Secretary Kathleen

Sebelius ("defendant" or "the Secretary"), alleging violations of the Administrative

Procedure Act ("APA"), 5 U.S.C. § 706, and the U.S. Constitution, seeking – among

other things – determinations that agency decisions were arbitrary, capricious, and not

supported by substantial evidence.  Before this Court are plaintiffs' Consolidated Motion

for Summary Judgment, July 23, 2010 ("Pls.' Mot. for Summ. J.") [Dkt. #17] and

defendant's Cross Motion for Summary Judgment, Oct. 21, 2010 ("Def.'s Cross Mot.")

[Dkt. #18].  Upon consideration of the parties' pleadings, relevant law, and the entire

record herein, plaintiffs' Motion for Summary Judgment is DENIED and defendant's

Cross Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I. Medicare's Statutory and Regulatory Background

#### A. *Reimbursement Process*

Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq*., establishes the federal Medicare health insurance program for the elderly and disabled ("beneficiaries"). Medicare operates by authorizing payments for in-patient and out-patient health-care services to "providers," such as hospitals, skilled nursing facilities, outpatient rehabilitation facilities, and home health agencies. 42 U.S.C. §§ 1395cc(a), 1395x(u).

The Centers for Medicare and Medicaid Services ("CMS") administers Medicare on behalf of the Secretary. *See id*. CMS, in turn, contracts with insurance companies who operate as "fiscal intermediaries" for the program and perform payment and audit duties. *Id*. § 1395h. Fiscal intermediaries are charged with an important role: determining, in the first instance, the reimbursement amount Medicare providers are due under law and interpretive guidelines. 42 U.S.C. §§ 1395h, 1395kk-1; 42 C.F.R. § 413.20(b).

To obtain reimbursement, a provider files an annual Medicare cost report with its fiscal intermediary, detailing the costs incurred from providing health services to beneficiaries. 42 C.F.R. § 413.24(f); § 405.1801(b)(1). The intermediary reviews the cost report and issues a notice of provider reimbursement ("NPR") stating the amount of Medicare reimbursement due to the provider. *Id*. § 405.1803. If the fiscal intermediary denies a requested reimbursement, or if the provider is otherwise dissatisfied with the

2

reimbursement amount, the provider may appeal the intermediary's determination to the Provider Reimbursement Review Board ("PRRB" or "the Board").[1] 42 U.S.C. § 1395oo(a). The PRRB's decision is final and represents the Secretary's final decision unless she explicitly reverses, affirms, or modifies the Board's decision. *Id.* § 1395oo(f). If a provider is dissatisfied even after an appeal to the Board, the provider may seek judicial review pursuant to 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877(b).

## B. *Reimbursement Coverage*

In general, Medicare pays for a provider's "allowable costs," which primarily consist of operating and capital-related costs. 42 U.S.C. § 1395ww(a)(4). With respect to operating costs, CMS reimburses inpatient medical services through a prospective payment system ("Inpatient PPS") which establishes a predetermined reimbursement fee for each patient instead of reimbursing based on the provider's actual costs. 42 U.S.C. § 1395ww(d); *see also Washington Hosp. Ctr. v. Bowen*, 795 F.2d 139 (D.C. Cir. 1986). Until 1987, capital-related expenses were excluded from the definition of "operating costs," 42 U.S.C. § 1395ww(a)(4), and were instead reimbursed under a more generous "reasonable cost" calculation. 42 C.F.R. § 413.130 *et seq.* In 1987, however, Congress passed a law directing HHS, through CMS, to develop and implement by October 1, 1991, a prospective payment system ("Capital PPS") to reimburse the capital-related costs for inpatient, acute-care hospitals. Omnibus Budget Reconciliation Act of 1987,

---

[1]    The PRRB is a statutory entity within HHS, with members appointed by the Secretary, which has jurisdiction over certain Medicare reimbursement appeals from providers and hospitals. *See* 42 U.S.C. § 1395oo.

Pub. L. No. 100-203 § 4006(b)(1) (1987) (amending 42 U.S.C. § 1395ww(g)) . Thus, when Capital PPS was implemented in 1991, the "reasonable cost" methodology for reimbursing capital costs was replaced with a ten-year transition to a less lucrative prospective payment system. 56 Fed. Reg. 43,358 (Aug. 30, 1991) (final rule).

Importantly, during the ten-year transition, the Secretary exempted[2] "new hospital[s]" from Capital PPS for the first two years of their operations. 67 Fed. Reg. 49,982-01, 50,101 (Aug. 1, 2002) (final rule). During that time, "new hospitals" would be reimbursed at 85 percent of "reasonable costs," *id.*, instead of under the less lucrative Capital PPS methodology. Although the exemption originally spanned the ten-year transition period to Capital PPS, 56 Fed. Reg. 43,363, the Secretary later extended the "new hospital" exemption indefinitely for cost-reporting periods beginning October 1, 2002. 67 Fed. Reg. 49,982-01, 50,101 (Aug. 1, 2002) (final rule).[3]

## II. Procedural and Factual Background[4]

Plaintiffs[5] are Medicare-participant Long-Term Acute-Care Hospitals ("LTCHs").

---

[2]    *See* 42 U.S.C. § 1395ww(a)(2). The statute specifically gives the Secretary authority to exempt from, or make exceptions to, Capital PPS. *Id.*

[3]    This left a one-year period from October 2, 2001 to September 30, 2002, during which no exemption from Capital PPS would be available to "new hospitals." That is, all "new hospitals" would be reimbursed under Capital PPS for capital-related expenses.

[4]    It is worth noting plaintiffs' concession that "[t]he facts of these cases are undisputed – and the key dispositive facts were jointly stipulated before the PRRB." Pls.' Mot. for Summ. J. at 8.

[5]    For a full list of the more than twenty-five plaintiffs in this case, see Bloomington Compl., Oct. 23, 2009 [9cv2008, Dkt. #1]; Augusta Compl., Dec. 14, 2009 [9cv2362, Dkt. #1].

Bloomington Compl., Oct. 23, 2009, ¶ 1 ("Bloomington Compl.") [No. 9-cv-2008, Dkt. #1]; Augusta Compl., Dec. 14, 2009, ¶¶ 12-30 ("Augusta Compl.") [No. 9-cv-2362, Dkt. #1]. Often maintaining only thirty or forty beds, LTCHs are "designed, staffed, and operated specifically to treat medically complex patients requiring long hospital stays." Pls.' Consol. Mot. for Summ. J., July 23, 2010, at 6 ("Pls.' Mot. for Summ. J.") [Dkt. #17]; *see also* 42 U.S.C. § 1395x(ccc). Indeed, to qualify as an LTCH, a hospital must treat Medicare beneficiaries whose average length of stay is greater than twenty-five days. Pls.' Mot. for Summ. J. at 6; Def.'s Cross Mot. at 5; *see also* 42 C.F.R. § 412.23(e); 42 U.S.C. § 1395x(ccc). In addition to being LTCHs, all but two plaintiffs[6] are also characterized as hospitals-within-hospitals ("HIHs"): independent providers located in the same building or on the same campus as a preexisting "host" hospital. 42 C.F.R. § 412.22(e); Def.'s Cross Mot. at 7.

This case concerns one critical issue: whether plaintiffs were "new hospitals" under 42 C.F.R. § 412.300(b) for capital-cost reimbursement during their "start-up cost[-] reporting periods." Bloomington A.R. at 11 (Provider Reimbursement Review Board Decision ("PRRB Decision"), Aug. 19, 2009); Augusta A.R. at 14 (PRRB Decision, Oct. 15, 2009). Practically speaking, the question is whether plaintiff hospitals are entitled to capital-cost reimbursement under Capital PPS, or the more favorable 85-percent-of-reasonable-cost methodology. The answer turns on whether plaintiffs meet the definition

---

[6]     Select Specialty-South Dallas, Inc. and Victoria Healthcare, Inc. are freestanding hospitals – that is, they are not located in the same building as another hospital. Def.'s Cross Mot. at 7; 42 C.F.R. § 412.22(e).

of "new hospital" under 42 C.F.R. § 412.300(b).

42 C.F.R. § 412.300(b) states that a "new hospital" is a "hospital that has operated (under previous or present ownership) for less than 2 years." *Id.* The regulation excludes the following hospitals from the definition of "new hospital":

> (1) a hospital that builds new or replacement facilities at the same or another location even if coincidental with a change of ownership, a change in management, or a lease arrangement; (2) a hospital that closes and subsequently reopens; (3) a hospital that has been in operation for more than 2 years but has participated in the Medicare program for less than 2 years; [and] (4) a hospital that changes its status from a hospital that is excluded from the prospective payment systems to a hospital that is subject to the capital prospective payment systems. 42 C.F.R. § 412.300(b)(1)-(4).

It is undisputed that plaintiffs are now[7] LTCHs, all but two[8] of which operate as HIHs. Bloomington A.R. 781 ¶ 3; Augusta A.R. 230 ¶ 3. It is also undisputed that although each plaintiff had been operating as a hospital for less than two years, Bloomington Compl. ¶ 45,[9] "[a]ll of the buildings where the Providers lease[d] space were operated by the host hospital for more than 2 years prior to the lease arrangement." Bloomington A.R. 11, 781; Augusta A.R. 14, 230 ¶ 4. Each plaintiff incurred capital-

---

[7] During the cost-reporting periods at issues here, plaintiffs were not yet certified as LTCHs and were instead paid as acute-care hospitals "subject to Inpatient PPS and Capital PPS." Def.'s Cross Mot. 8. LTCHs are certified only after demonstrating, over a six-month period, that the provider treats Medicare beneficiaries for an average of more than twenty-five days. 42 U.S.C. § 1395x(ccc); 42 C.F.R. § 412.23(e).

[8] Two plaintiffs are LTCH free-standing hospitals, *see supra* n.6, located within existing buildings. Bloomington A.R. 781 ¶ 2.

[9] Unlike the HIH plaintiffs, the two free-standing-hospital plaintiffs each leased space from a facility that had operated as hospitals for more than two years, but not in the two years immediately preceding the lease. Bloomington A.R. 781 ¶ 6.

related start-up costs from renovating the existing facilities, Bloomington A.R. 298-303, Augusta A.R. 183-90, and each identified itself as a "new hospital" when submitting Medicare cost reports to its intermediary.[10] Bloomington A.R. 10; Augusta A.R. 14. As a result, each plaintiff requested reimbursement under the "new hospital" exemption – that is, reimbursement for 85 percent of reasonable cost instead of under Capital PPS. *Id.*

Each fiscal intermediary issued an NPR for that cost-reporting period finding that plaintiffs were not "new hospitals" for the purpose of capital costs and, as a result, reimbursed each plaintiff at the lower Capital PPS rate. *Id.* Plaintiffs appealed the intermediaries' adjustments and determinations to the PRRB. Bloomington A.R. 82-199, 787-836; Augusta A.R. 420-776. Upon review, the PRRB found that the definition of "new hospital" in 42 C.F.R. § 412.300(b) was "ambiguous" as to whether a "hospital" is defined by the business entity of the hospital or the "individual physical assets" of a hospital. Bloomington A.R. 16; Augusta A.R. 19.

Ultimately, a three-member majority of the Board concluded that the term "hospital . . . requires, at the very least, an analysis of the physical assets," and as a result, the regulation intends "new hospitals" to mean "newly built hospitals." Bloomington A.R. 16; Augusta A.R. 19.[11] The majority based its decision on two main factors. First,

---

[10]     In addition, each plaintiff LTCH was separately licensed and certified as a unique hospital for purposes of Medicare administration. Bloomington A.R. 781 ¶ 5; Augusta A.R. 230 ¶ 6.

[11]     The two decisions are almost identical, except that the Bloomington decision involved some plaintiffs whose capital costs were incurred during the statutory "gap" year. *See supra*, n.3; *see also* Pls.' Mot. for Summ. J. at 17, n.14.

it looked to 42 C.F.R. § 412.300(a) for the statute's purpose: establishing a "prospective payment system for inpatient hospital *capital-related costs*." *Id.* (emphasis added). Turning to 42 C.F.R. § 412.302, which defines "capital costs," the Board determined that § 412.300(a)[12] "requires, at the very least, an analysis of the [hospital's] physical assets." Bloomington A.R. 16; Augusta A.R. 19. Second, the Board looked to the Secretary's preamble for § 412.300 to determine that the "new hospital" exemption was intended to address the needs of "newly built hospitals." Bloomington A.R. 17; Augusta A.R. 19-20 ("This payment provision was implemented to provide special protection to new hospitals during the transition period in response to concerns that prospective payments under a DRG system may not be adequate initially to cover the capital costs of *newly* built hospitals." (quoting 67 Fed. Reg. 49,982, 50,101 (Aug. 1, 2002) (final rule) (emphasis original to Board decision)); Bloomington A.R. 17; Augusta A.R. 19-20.

This reasoning led the Board to a final conclusion: that "the intent of the regulations is to prohibit the cost reimbursement treatment under the exemption for hospitals' facility costs that have been reimbursed in the pr[e]ceding two years." Bloomington A.R. 17; Augusta A.R. 20. Accordingly, because each plaintiff operated in a facility that had operated as a hospital for more than two years prior to plaintiffs' independent operation, plaintiffs were not "new hospitals" under 42 C.F.R. § 412.300(b).[13] *Id.* Two Board members dissented, finding that the regulation was clear

---

[12]     "This subpart . . . establish[es] a prospective payment system for inpatient hospital capital-related costs." 42 C.F.R. § 412.300(a).

[13]     Indeed, the Board noted that "the fact that each 'host' hospital operated as a

8

and that because "[t]he Providers are new hospitals separate and distinct from the host hospitals, none of the exceptions to the definition of 'new hospital' apply to the Providers and none of the Providers' LTCHs were previously operated," plaintiffs qualify as new hospitals under 42 C.F.R. § 412.300(b). Bloomington A.R. 22; Augusta A.R. 24.

The Secretary declined to review the Board's decision, adopting it by default as her own. Bloomington A.R. 1; Augusta A.R. 1. The Bloomington and Augusta plaintiffs brought suit in October and December 2009, respectively, and later filed on July 23, 2009, a consolidated motion for summary judgment claiming that: (1) the Board's decision denying capital-cost reimbursement as "new hospitals" is arbitrary, capricious, an abuse of discretion and not in accordance with the law; (2) the Board's findings and conclusions are unsupported by substantial evidence on the administrative record; (3) the Board's interpretation of "new hospital" is invalid because its interpretation substantively changes the rule such that notice and comment is required under the APA; and (4) the Capital PPS regulation and the Board's application of it violate the Equal Protection and Due Process Clauses. *See* Pls.' Mot. for Summ. J. In October 2010, the Secretary responded with a Cross Motion for Summary Judgment.

---

hospital for more than two years prior to the execution of the lease agreements for a portion of the same space that the Providers were later located, *violates the intent of the regulation*." Bloomington A.R. 17; Augusta A.R. 20 (emphasis added).

The Board also determined that the "regulation does not permit the [new hospital] exemption to be applied" to cost reporting periods between October 1, 2001 and October 1, 2002, thereby rejecting plaintiffs' requests that the "new hospital" exception apply to cost reporting periods prior to October 1, 2002. Bloomington A.R. 17.

## ANALYSIS

### I.  Standard of Review

#### A. *Rule 56(a) Summary Judgment*

Under Federal Rule of Civil Procedure 56(a),[14] summary judgment is appropriate

when the evidence in the record demonstrates that "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Rule 56(a); *see,*

*e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the

initial burden to show the absence of a material fact in dispute, *Celotex*, 477 U.S. at 323,

and the court accepts as true the evidence of the non-movant and draws all reasonable

inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

When evaluating cross motions, "the court shall grant summary judgment only if one of

the moving parties is entitled to judgment as a matter of law upon material facts that are

not genuinely disputed.  Summary judgment is also appropriate where, as here, review is

on the administrative record." *GCI Health Care Ctrs., Inc. v. Thompson*, 209 F. Supp. 2d

63, 67-68 (D.D.C. 2002) (citations omitted).

#### B. *APA Review of the Secretary's Decision*

Judicial review of final Medicare reimbursement decisions is governed by the

Administrative Procedures Act ("APA").  *See* 42 U.S.C. § 1395oo(f)(1).  A plaintiff bears

the burden of showing that agency action has violated the APA. *Heartland Regional*

*Med. Ctr. v. Leavitt*, 511 F. Supp. 2d 46, 51 (D.D.C. 2007).

Under the APA, final agency action may be found unlawful if it is "arbitrary,

---

[14]    Previously Fed. R. Civ. Pro. 56(c).

capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §

706(2)(A). Importantly, the "arbitrary and capricious" standard does not allow the Court

to substitute its judgment for that of the administrative agency. *Motor Veh. Mfrs. Ass'n v.*

*State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983). Agency action is arbitrary only if it is

"not rational and based on consideration of the relevant factors." *FCC v. Nat'l Citizens*

*Comm. for Broad.*, 436 U.S. 775, 803 (1978).

Final agency action is also unlawful if it is "unsupported by substantial evidence."

5 U.S.C. § 706(2)(E). But agency action is "unsupported by substantial evidence" only

when it lacks what "a reasonable mind might accept as adequate to support a conclusion."

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619-20 (1966) (internal citation and

quotations omitted).

"Whether the Secretary's decision is more appropriately reviewed under the

arbitrary and capricious standard or the substantial evidence standard is of little, if any,

practical consequence since both standards 'involve the same level of scrutiny.'"

*Abington Crest Nursing & Rehab. Ctr. v. Leavitt*, 541 F. Supp. 2d 99, 104 n.4 (D.D.C.

2008) (*quoting Mem. Hosp./Adair County Hlth. Ctr., Inc. v. Bowen*, 829 F.2d. 111, 117

(D.C. Cir. 1987)).

Indeed, the Court's review of final action affords "substantial deference" to an

agency's interpretation of its own regulations. *Abington*, 541 F. Supp. 2d at 104.

Ultimately, this amounts to something "more deferential . . . than that afforded under

*Chevron*." *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 52 (D.C. Cir. 1999).

As a result, the "agency's interpretation [receives] 'controlling weight unless it is plainly

erroneous or inconsistent with the regulation.'" *Abington*, 541 F. Supp. 2d at 104-05 (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)).[15]

Unfortunately for plaintiffs, in light of the deferential standard afforded to final agency action and interpretation, and considering the factual record and evidence presented, this Court must deny plaintiffs' Motion for Summary Judgment because there is no genuine issue of material fact and plaintiffs are not entitled to judgment as a matter of law. To the contrary, and for the following reasons, defendant is entitled to judgment as a matter of law and, as a result, the Court will grant in large part her Cross Motion for Summary Judgment.

## II.     The Board's Interpretation of "New Hospital" is Reasonable.

First and foremost, plaintiffs' Motion for Summary Judgment must be denied because, contrary to plaintiffs' assertions, the Board's interpretation of "new hospital" under 42 C.F.R. § 412.300(b) was reasonable. Before evaluating the reasonableness of the regulatory interpretation, however, the Court must first determine whether 42 C.F.R. § 412.300(b) is actually ambiguous.

The Board determined – and defendant agrees – that because it is unclear whether "hospital" signifies a business entity or the physical assets of a hospital, the regulation is ambiguous. Bloomington A.R. 16; Augusta A.R. 19. Plaintiffs, of course, disagree. They argue that the regulation is "clear on its face," Pls.' Mot. for Summ. J. at 24, and "settled by the plain language of the regulation." *Id.* at 27 (quoting *United States v.*

---

[15]     In addition, the Secretary's interpretation of a regulation receives deference even if statutory language is ambiguous. *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 21 (1999).

*Levin*, 496 F. Supp. 2d 116, 120 (D.D.C. 2007)). As a result, plaintiffs argue, the Board's determination contravenes the plain meaning of the regulation and is, therefore, arbitrary and capricious. *See Dialysis Clinic v. Leavitt*, 518 F. Supp. 2d 197, 202 (D.D.C. 2007) (deference not appropriate if agency's construction is plainly erroneous or is inconsistent with the regulation); *see also* Pls.' Mot. for Summ. J. at 23.

Importantly, it is not the role of this Court to substitute its judgment for that of the administrative agency – here, the Secretary and the Board. *See Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43. In light of that stricture, and assessing each party's arguments, I agree with defendants: the regulation *is* ambiguous and "can reasonably be interpreted multiple ways, giving rise to multiple conclusions." *See* Pls.' Mot. for Summ. J. at 27 (citing *Levin*, 496 F. Supp. 2d at 120). How so?

### A. *The Board Properly Held That 42 C.F.R. § 412.300(b) Is Ambiguous.*

First, plaintiffs argue that the terms "own" and "operated" in § 412.300(b)[16] plainly reference a "hospital" which provides medical services, and which can be Medicare-certified – neither of which require construction of a new physical facility. Pls.' Mot. for Summ. J. at 24-25. Under this interpretation, plaintiffs qualify as "new hospitals" because each LTCH was newly licensed and Medicare-certified; each operated as a legal entity for less than two years prior to the cost-reporting period at issue; and no

---

[16] "For purposes of this subpart, a new hospital means a hospital that has *operated* (under previous or present *ownership*) for less than 2 years." 42 C.F.R. § 412.300(b) (emphasis added).

hospital "bring[s] an historic asset base to [its] Medicare operation." *Id.* (citing stipulated facts in Bloomington A.R. 781 and Augusta A.R. 230).

Defendant does not contest the stipulated facts plaintiffs offer, but is quick to point out that § 412.300(b) says nothing about the factual scenario before this Court: that is, whether a renovated hospital leased from a pre-existing hospital facility, but operating as a separate legal entity, may be considered a "new hospital" for purposes of Medicare capital-cost reimbursement. Def.'s Cross Mot. at 14. As such, defendant insists, plaintiffs are hard-pressed to argue that the regulation is clear on its face. Moreover, defendant – like plaintiffs – points to the language of § 412.300(b) to support her interpretation: that physical assets must be part of the "new hospital" analysis. Specifically, defendant asserts that the regulation contemplates a scenario in which "control of a physical facility can pass between different legal entities (different owners, or an owner and a lessee) *without* creating a 'new hospital.'"[17] *Id.* at 15 (citing 42 C.F.R. § 412.300(b)(1) (emphasis in original)). Thus, status as a new legal entity is not, by itself, sufficient to qualify as a "new hospital" under the regulation. *Id.*

Indeed, 42 C.F.R. § 412.300(b)(1) *does* contemplate that new legal entities may not be considered "new hospitals" for purposes of capital reimbursement under Medicare. That both parties offer plausible, alternative interpretations of the regulation, however, only underscores that 42 C.F.R. § 412.300(b) is, in fact, ambiguous.

---

[17]    For example, the regulation excludes from the definition of "new hospital" a "hospital that builds new or replacement facilities at the same or another location even if coincidental with a change of ownership, a change in management, or a lease arrangement." 42 C.F.R. § 412.300(b)(1).

Next, plaintiffs argue that because none of the "new hospital" exceptions in 42 C.F.R. § 412.300(b) specifically apply to them, plaintiffs' hospitals must not be excluded under the definition – and therefore must be "new" under the regulation. Pls.' Mot. for Summ. J. at 26. But this logic prevails only if the four exceptions represent the entire universe of what may be excluded from the definition of "new hospital." It doesn't!

Although the regulatory language does not articulate explicitly that the § 412.300(b) exceptions are exclusive, neither does it state that the exceptions are non-exclusive. *See* 42 C.F.R. § 412.300(b) ("The following hospitals are not new hospitals. . ."). The language, regrettably, is ambiguous: it suggests that the ensuing examples are merely examples, but also could be interpreted as enumerating an exclusive list. Once again, the parties' arguments and the language of the regulation itself point to ambiguity. Simply put, plaintiffs have not convinced this Court of 42 C.F.R. § 412.300(b)'s clarity. At every turn, each party offers credible – albeit competing – interpretations. But instead of convincing this Court that the regulation is clear, plaintiffs' efforts only affirm how this regulation affords multiple, plausible interpretations and is, therefore, ambiguous. *See Levin*, 496 F. Supp. 2d at 120 (a "regulation is ambiguous if it can reasonably be interpreted multiple ways giving rise to multiple conclusions").[18] As a result, the Board's finding that the regulation is ambiguous is not (as plaintiffs claim) arbitrary and capricious, an abuse of discretion, or contrary to law. *See* Pls.' Mot. for Summ. J. at 27.

---

[18]     For these same reasons, and in light of the regulation's ambiguity, plaintiffs' claims of impropriety as it relates to the Board's comparison of the term "hospital" to the term "provider," found in a separate chapter of the same regulation, *see* 42 C.F.R. § 413.30(d) (regulating skilled nursing facilities), are unavailing. *See* Pls.' Mot. for Summ. J. at 27-29; Def.'s Cross Mot. at 14 n.12.

**B. *The Board Properly Determined That The Definition Of "New Hospital" Must Account For Physical Assets.***

Plaintiffs continue by arguing that even if 42 C.F.R. § 300(b) *were* ambiguous, the Board's interpretation of it was incorrect as a matter of law. But in so doing, plaintiffs seem to ignore the only salient question: whether the Board's construction and application of the regulation was reasonable. *See Wy. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 52 (D.C. Cir. 1999) ("So long as an agency's interpretation of ambiguous regulatory language is reasonable, it should be given effect.") (internal citation omitted). Indeed, "[a] court need not find that the agency's construction is the only possible one, or even the one that the court would have adopted in the first instance." *Id.* at 52 (internal citation omitted). In light of this deferential standard, and my finding that the regulation is, in fact, ambiguous, this Court "must defer to the [Secretary's] interpretation of [her] own regulations." *Id.*; *see also Thomas Jefferson Univ.,* 512 U.S. at 512 (agency's interpretation of its own regulations is entitled to "substantial deference").

Notwithstanding the incredibly deferential standard they face, plaintiffs offer a litany of reasons why the Board's interpretation of 42 C.F.R. §412.300(b) was erroneous. For example, plaintiffs contend that the regulatory scheme – including 42 C.F.R. § 412.300(a), which the Board cites with approval – evinces no intent to require analysis of a "new hospital's" physical assets. Pls. Mot. for Summ. J. at 30-31. Yet this assertion does not overcome the Board's reasoned inference that § 412.300(a) – which demonstrates the regulation's purpose to implement Capital PPS for hospitals' "capital-

related costs" – requires, "at the very least," consideration[19] of a hospital's physical assets. *See* Def.'s Cross Mot. at 19 (quoting Bloomington A.R. 16; Augusta A.R. 19).

Nor do plaintiffs prevail by arguing that the Board erroneously determined that the regulatory intent prohibited a hospital from qualifying as "new" if it was part of a facility whose costs had been reimbursed during the "pr[e]ceding" two years. Bloomington A.R. 17; Augusta A.R. 20; Pls.' Mot. for Summ. J. at 32-33. The regulation's text says nothing about cost-reimbursement in the preceding two years, plaintiffs argue; it analyzes only whether a hospital which has operated for two years or less has incurred costs. Pls.' Mot. for Summ. J. at 32-33. Moreover, they argue, the text of § 412.300(b) does not explicitly require that a hospital be "newly built" to fit the definition of "new." *Id.* at 33.

Plaintiffs' arguments are, of course, reasonable, but they too quickly cast aside the Secretary's contemporaneous explanation of § 412.300's regulatory purpose. In the preamble to the final rule, the Secretary stated that § 412.300(b) aimed to provide "special protection" to "*newly built hospitals*" in their "initial [two] years" of operation, all for the purpose of compensating potential Capital PPS reimbursement inadequacies for "significant capital startup costs." Def.'s Cross Mot. at 19-20 (citing 67 Fed. Reg. 49,982, 50,101 (Aug. 1, 2002) (final rule) (emphasis added)). *See also Wy. Outdoor Council*, 165 F.3d at 53 ("[W]e have often recognized that the preamble to a regulation is evidence of an agency's contemporaneous understanding of its proposed rules.") (internal

---

[19]     Contrary to plaintiffs' policy extrapolations suggesting otherwise, the Board did not advocate that physical assets are the *only* consideration in a "new hospital" analysis. *See* Pls.' Mot. for Summ. J. at 31 (extrapolating "absurd results" by replacing the term "hospital" with "physical assets" in the regulation).

citations omitted). Although the preamble is not dispositive, it is certainly probative. Once again, plaintiffs' alternative interpretation is not sufficient to overcome the Board's reasonable construction.[20]

Finally, plaintiffs contend that Congress directed CMS to offer exceptions to Capital PPS in cases of a hospital's "special needs," *see* 42 U.S.C. § 1395ww(a)(2),[21] including the need for enhanced capital-cost reimbursement during the first two years of a hospital's operation. *See* Pls.' Mot. for Summ. J. at 34-35. According to plaintiffs, their hospitals – which have operated as new legal entities and incurred start-up renovation expenses during a time of "initial low occupancy," *see* Bloomington A.R. 24 (first dissent), Augusta A.R. 26 (second dissent) – have such "special needs" and therefore require "special protection during their initial period of operations." Pls.' Mot. for Summ. J. at 35. Thus, plaintiffs argue that denying a Capital PPS exemption contravenes the regulatory intent, and is therefore arbitrary and capricious.

---

[20]     Plaintiffs' citation to the initial notice of proposed rulemaking, and the concern evinced for new "entrants" into the Medicare program, *see* Pls.' Mot. for Summ. J. at 33-34, adds to speculation about intent, but is not dispositive on the issue. Moreover, the Board's interpretation comports with common sense. If whether a hospital is "new" depends on how extensively it is renovated – instead of whether it is newly built – the Secretary would be forced to evaluate when renovations to an existing hospital rise to the level of "new" for purposes of Capital PPS exemption. Neither the text of the regulation nor the contemporaneous explanations of regulatory intent demonstrate a desire for the Secretary to engage in such evaluation. *See* Def.'s Cross Mot. at 21 n.18.

[21]     "The Secretary shall provide for such exemptions from, and exceptions and adjustments to, the limitation established under paragraph (1)(A) as he deems appropriate, including those which he deems necessary to take into account . . . the *special needs* of sole community hospitals, *of new hospitals* . . . and of hospitals which provide atypical services or essential community services, and to take into account extraordinary circumstances beyond the hospital's control. . ." 42 U.S.C. § 1395ww(a)(2)(A) (emphasis added).

Unfortunately for plaintiffs, they ignore the plain text of the statute – and significantly, the portion in which "special needs" modifies "new hospitals." *See* 42 U.S.C. § 1395ww(a)(2)(A) ("The Secretary shall provide for such exemptions from, and exceptions and adjustments to, the limitation established under paragraph (1)(A) as he deems appropriate, including . . . the *special needs* of sole community hospitals, *of new hospitals* . . . and of hospitals which provide atypical services or essential community services. . . .") (emphasis added). Thus, plaintiffs' "special needs" arguments – however compelling they may be – ring hollow without proof that plaintiffs fit the statutory definition of "new hospital." *See* Def.'s Cross Mot. at 21-22. Moreover, neither the statutory text nor the legislative history contemplate the renovation of existing hospitals as an example of a "special needs" exemption for "new hospitals." *Id.* Contrary to plaintiffs' arguments, it is not the duty of this Court to decide *whether* – as a matter of policy – renovated hospitals bear the same type of costs as newly built ones, or deserve the same protection as other new Medicare entrants. *See* Pls.' Mot. for Summ. J. at 35. This Court must decide only whether the Board's interpretation of the statue was reasonable, and both the statute and the record here suggest that it was. Accordingly, the Board's interpretation is not contrary to the regulatory scheme and must be upheld.

Because no genuine issue of material fact exists; because the Secretary's interpretation of "new hospital" is not arbitrary, capricious, or an abuse of discretion; and because defendants are entitled to judgment as a matter of law, plaintiffs' Motion for Summary Judgment must be denied on this claim, and the Board's decision must be upheld.

**III.     The Board's Decision Was Supported By Substantial Evidence From the Administrative Record.**

Plaintiffs also argue that summary judgment is appropriate because the Board's decision was not supported by substantial evidence from the administrative record, and is arbitrary, capricious, an abuse of discretion, and not in accordance with law. *See* 5 U.S.C. § 706(2)(A),(E); *see also* Pls.' Mot. for Summ. J. at 40-41. I disagree.

Plaintiffs begin by seeming to argue that the Board's interpretation of "new hospital" was unsupported by facts in the administrative record. But plaintiffs' claim is not really about ignored facts; it is merely a recapitulation of their legal argument in favor of a plain-language regulatory interpretation. *Compare* Pls.' Mot. for Summ. J. at 22-30, *with* Pls.' Mot. for Summ. J. at 41-42. Tellingly, both parties agree that each plaintiff LTCH operated as an independent provider in space leased from a preexisting hospital facility. *Id.* at 41-42 (citing stipulated facts). But the existence of those *facts* did not, and should not, affect the Board's interpretation of the regulation as a matter of *law.* Indeed, having already concluded that the Board's regulatory interpretation was reasonable, I have no trouble finding that the Board's application of that regulation to the stipulated facts was also reasonable and based on the administrative record before it.

Next, plaintiffs argue that even *if* the Board's regulatory interpretation were correct, the Board's decision to deny "new hospital" reimbursement was unsupported by facts on the administrative record because plaintiff hospitals were, in fact, "newly built." Pls.' Mot. for Summ. J. at 42-43. To prove this, plaintiffs list various renovation expenses (all contained in the administrative record) ranging from design to demolition to

construction, all of which "conclusively" demonstrate "that each [p]laintiff LTCH is a new hospital under 42 U.S.C. § 412.300(b)." *Id.* Yet plaintiffs' status as a "new hospital" is far from conclusive because it is premised on a regulatory interpretation which is unavailing. Indeed, no amount of renovation expenses can overcome the stipulated fact that plaintiff hospitals were leased from existing facilities and, therefore, were not "new" under the definition this Court has already deemed reasonable.[22] *See* Pls.' Mot. for Summ. J. at 11 (conceding that "each Plaintiff LTCH commenced operations in an existing physical building").

Finally, plaintiffs claim that the Board's regulatory interpretation, even if correct, does not apply to the two plaintiff hospitals which are free-standing. Pls.' Mot. for Summ. J. at 43-44. In essence, they contend that since no other hospital operated in the same facility during, or for the two years immediately preceding the cost-reporting periods at issue, the free-standing hospitals qualify as "new hospitals" because the

---

[22]     In addition, plaintiffs protest the Board's "presumption" that Medicare double-reimbursed their leased hospitals – that is, that Medicare reimbursed the facilities' original owners upon completion of initial construction, such that reimbursing plaintiffs now would allow the same facility to be reimbursed twice under Capital PPS. Pls.' Mot. for Summ. J. at 43-44; *see also* Bloomington A.R. at 16 (first decision); Augusta A.R. at 19 (second decision) ("[T]he bricks and mortar [of plaintiffs' hospitals] were established and presumably the original costs associated with the space claimed by the 'host hospital' for Medicare reimbursement during the years in which they operated out of the space."). It is entirely reasonable to presume, however, that – as a general matter – some portion of a preexisting facility's original building costs would already be reimbursed. The Board was tasked with interpreting the regulation as a matter of law, and ensuring that its interpretation – and related policy – comported with the regulatory intent: limiting initial capital reimbursement for newly build hospitals. *See* Augusta A.R. at 19. Thus, whether the initial owners of plaintiffs' facilities were, in fact, reimbursed under Capital PPS is irrelevant to the Board's application of a legal definition to facts about plaintiffs' renovations.

regulation does not specify whether the requirement of two years of operation must be prior to, or immediately preceding, the relevant cost-reporting period. *Id.* (citing Bloomington A.R. 781); *see also* 42 U.S.C. § 412.300(b) ("new hospital" is a "hospital that has operated (under previous or present ownership) for less than 2 years"). While the Board's reasoning – to which this Court has already deferred – broadly excludes from the statutory definition of "new hospital" all hospitals which are not "newly built," Bloomington A.R. 17, Augusta A.R. 19-20, it also appears to include a narrowing, temporal element which implicitly endorses an "immediately prior" interpretation. *See* Bloomington A.R. 17, Augusta A.R. 20 ("[T]he intent of the regulations is to prohibit the cost of reimbursement treatment under the exemption for hospitals' facility costs that have been reimbursed in *the* pr[e]ceding two years."). Because it is unclear whether the Board intended to qualify its broad, interpretive principle – which I have already concluded is reasonable – with this narrowing language ("the pr[e]ceding two years"), and as a result treat plaintiffs' two free-standing hospitals as "new hospitals" under the statute, I will remand that limited issue to the Board for further explanation. *See Cty. Of Los Angeles v. Shalala*, 192 F.3d 1005, 1023 (D.C. Cir. 1999) ("[W]here the record before the agency does not support the agency action . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal citations and quotations omitted).

In sum, with the exception of the narrow and aforementioned free-standing-hospital issue, plaintiffs offer no evidence that the Board failed to "search the entire record . . . to determine whether on the basis of all the testimony and exhibits before the

22

agency it could fairly and reasonably find the facts as it did." *Braniff Airways, Inc. v. C.A.B.*, 379 F.2d 453, 462-63 (D.C. Cir. 1967) (internal citations omitted). As a result, plaintiffs' Motion for Summary Judgment on this claim must be denied with respect to all issues except that of the free-standing hospitals, which is hereby remanded to the Board for further consideration and explanation.

## IV. Additional Notice and Comment Were Not Required.

In addition, plaintiffs argue that summary judgment should be granted in their favor because the Board modified the definition for "new hospital" under 42 U.S.C. § 412.300(b) without satisfying the requisite notice-and-comment procedures, thus violating the APA. *See* Pls.' Mot. for Summ. J. at 37-38; *see also Torch Operating Co. v. Babbitt*, 172 F. Supp. 2d 113, 124-25 (D.D.C. 2001) ("[I]f an agency gives a rule a sufficiently definite interpretation, and then later fundamentally modifies that interpretation, the agency must follow the procedures set forth in Section 553 of the APA for amending regulation[s]."). Specifically, plaintiffs contend that during prior cost-reporting periods, the fiscal intermediary "uniformly and consistently" awarded "new hospital" capital-cost reimbursements to comparable LTCHs. Pls.' Mot. for Summ. J. at 38. According to plaintiffs, however, the intermediary "abruptly" changed its reimbursement policy based on a modified interpretation of "new hospital," much to the detriment, and chagrin, of plaintiff hospitals. *Id.* at 38-39. Plaintiffs contend that this "new interpretation" is tantamount to the intermediary (and the Board) "adding new substantive requirements" – such as analyzing physical assets – to the definition of "new hospital": action that requires notice and comment under the APA. *Id.* at 39-40. Not so!

Even if plaintiffs' assertions were true – that is, even if the intermediary *did* make substantive changes to its interpretation of the regulatory definition of "new hospital" – plaintiffs' claim still fails as a matter of law. It is well established that a fiscal intermediary's role is limited, and that the actions and statements of an intermediary are *not* binding on the Secretary. *See, e.g.*, *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 64 (1984) (fiscal intermediary "only acted as a conduit" and "could not resolve policy questions"). For that reason, the intermediary's alleged actions and interpretations cannot, as a matter of law, modify a regulation.

Moreover, plaintiffs do not show that the Secretary actually changed her interpretation of the regulation. Plaintiffs neither point to evidence of the Secretary's definitive interpretation that renovated hospitals fit the § 412.300(b) definition of "new hospitals," nor do they show that the Board materially changed the definition of "new hospital" when it excluded plaintiffs from that definition. Since plaintiffs have not proved that the regulation changed, no additional rulemaking is required and no APA violation occurred. Accordingly, plaintiffs' Motion for Summary Judgment on this claim must also be denied.

## V. The Board Properly Found That the "New Hospital" Exception Was Unavailable In the Gap Year.

Plaintiffs' final argument is that the Board's decision to deny "new hospital" reimbursement to hospitals whose cost reporting began during the statutory "gap year" was arbitrary and capricious, an abuse of discretion, not in accordance with law, and in violation of the Equal Protection and Due Process Clauses of the Constitution. Pls.' Mot.

for Summ. J. at 44. As discussed earlier, the initial Capital PPS exemption – which provided a more lucrative, "reasonable cost" reimbursement for new hospitals – expired on October 1, 2001. Although the Secretary extended indefinitely new hospitals' exemption from Capital PPS, the final rule (enacted on August 1, 2002) applied this exemption only for cost-reporting periods on or after October 1, 2002. Def.'s Cross Mot. at 24; *see also supra,* n.3. The result was a one-year "gap" for hospitals reporting on or after October 1, 2001, but on or before October 1, 2002. *See* Def.'s Cross Mot. at 4-5.

During that gap period, "new hospitals" were reimbursed for capital-related expenses under Capital PPS[23] instead of under the 85-percent-of-reasonable-cost formula previously afforded by the "new hospital" exemption. *See* 42 C.F.R. § 412.304(c)(2)(i); *see also* Pls. Mot. for Summ. J. at 44-45. Indeed, the Secretary specifically declined to make the extension effective beginning on or after October 1, 2001, because "doing so would constitute retroactive rulemaking." *See* 67 Fed. Reg. 49,982-01, 50,102 (Aug. 1, 2002) (final rule); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (agencies may not engage in retroactive rulemaking without express or substantial statutory authority to do so). Plaintiffs contend that certain of their hospitals were denied reimbursement for start-up costs reported during the gap year, even though the hospitals incurred the same capital costs as new hospitals who *were* reimbursed immediately prior to or after the statutory gap period. *See* Pls. Mot. for Summ. J. at 14-14, 44-45.

---

[23]     Notably, "new hospitals" which applied for capital-cost reimbursement during the gap year were reimbursed under the same Capital PPS formula as all other "new" and non-new hospitals.

25

Plaintiffs specifically dispute CMS' failure to extend timely the regulatory exemption, as well as the Board's decision not to "correct" the "gap year oversight," suggesting that both entities had an obligation to do so. *See* Pls.' Mot. for Summ. J. at 45-50. The implication that CMS, the Secretary, or the Board were required to modify the regulation is, however, fatal to plaintiffs' claim. First, although 42 U.S.C. § 1395ww(a)(2) gives the Secretary discretion to implement "special needs" exemptions to Capital PPS, the statute does not compel the Secretary to exercise that discretion – and plaintiffs offer no evidence to the contrary.[24] Second, plaintiffs' assertion that the Secretary acted arbitrarily and capriciously is defeated by the fact that she considered – but specifically declined due to concerns of improper retroactive application – a commenter's request to renew the Capital PPS exemption for the gap year. *See* 67 Fed. Reg. 49,982-01, 50,102 (Aug. 1, 2002) (final rule). Last, plaintiffs cite no evidence to support the assertion that the Board had authority to "correct" or in any way modify the Secretary's regulations. To the contrary, the Board must comply with such regulations. *See* 42 C.F.R. § 405.1867 (Board must comply with Title 18 and all regulations promulgated under it).

Finally, plaintiffs contend that 42 C.F.R. § 412.300(b) violates the Fifth and the Fourteenth Amendments of the U.S. Constitution, facially and as applied, because it

---

[24]     For the same reason, plaintiffs' assertion that the Secretary and the Board could have applied retroactively the Capital PPS exemption fails. *See* Pls.' Mot. for Summ. J. at 46-47. Even if the Secretary had authority to regulate retroactively (a point which Defendant does not concede), plaintiffs offer no authority demonstrating that she was *required* to do so. Def.'s Cross Mot. at 25. Thus, the Secretary's actions are not arbitrary, capricious, or contrary to law.

"discriminates" by treating differently "hospitals with cost reporting periods beginning in the gap year . . . from similarly[] situated and comparable 'new hospitals' with cost reporting periods commencing immediately prior to and subsequent to the gap year." Pls.' Mot. for Summ. J. at 48-49. Please! Suffice it to say that plaintiffs' claim is woefully flawed. At the least, plaintiffs fail to show that "new hospitals" reporting *during* the gap period and *outside of* the gap period are similarly situated, or that the Secretary's action fails the rational basis test. Plaintiffs' Motion for Summary Judgment must, therefore, also be denied on this claim.

## CONCLUSION

For all of the foregoing reasons, the Court DENIES plaintiffs' Motion for Summary Judgment [Dkt. #17], GRANTS IN PART defendant's Cross Motion for Summary Judgment [Dkt. #18], and REMANDS to the Board the free-standing-hospital issue, *see supra,* Sec. III. The Court further DISMISSES with prejudice all claims but the free-standing-hospital claim. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge